IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED by ___ D.C.
INTAKE

DEC 1 8 1996

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. • MIAMI

UNITED STATES OF AMERICA,            *
                                     *
          Plaintiff,                 *
                                     *
     vs.                             *     CIVIL ACTION NO. 96-3611
                                     *
ROBERT W. CHRISTOPH, d/b/a           *     CIV-LENARD
FOX BRIAR FARM,                      *
                                     *
          Defendant,                 *     MAGISTRATE JUDGE
                                     *     JOHNSON

## C O M P L A I N T

COMES NOW plaintiff, United States of America, by and through the United States Attorney for the Southern District of Florida on behalf of the Commodity Credit Corporation, United States Department of Agriculture, and files this complaint, stating the following:

1.

This is a civil action brought by the United States of America, plaintiff, under the provisions of Title 15, United State Code, § 714b(c). This Court has jurisdiction over this matter by virtue of Title 28, United States Code, § 1345.

2.

At all pertinent times mentioned herein, the plaintiff was acting by and through its officers and agents who are

employees of its agency, the Commodity Credit Corporation, United States Department of Agriculture, and the United States of America is the real party in interest.

3.

The defendant producer, Robert W. Christoph d/b/a Fox Briar Farm, is residing in Dade County, Florida, within the jurisdiction of this court.  The defendant producer's present post office address, according to plaintiff's information and belief, is 300 Alton Road, Suite 303, Miami Beach, Florida 33139.

4.

On or about March 17, 1993, Robert W. Christoph d/b/a Fox Briar Farm, executed one Contract to Participate in the 1993 Price Support and Production Adjustment Programs.  A copy of the contract and the appendix thereto as attached hereto and made a part hereof as Composite Exhibit A.

5.

Pursuant to said contract, and the 1993 Feed Grain Program, 7 C.F.R. § 1413 et. seq. (revised as of January 1, 1994), the defendant producer received advanced deficiency payments from the plaintiff.  Subsequently, it was determined by the plaintiff that said payments were unearned and must therefore be refunded, pursuant to 7 C.F.R. § 1413.101(e) and 7 C.F.R. 1413.102(d).

6.

Plaintiff has demanded that the defendant producer refund the unearned payments, but the defendant has refused to comply with said demand.  Copies of six demand letters written

2

between the dates of December 29, 1993 and October 5, 1995, are attached hereto and made a part hereof as Composite Exhibit B.

7.

As of January 28, 1996, there is owed to the United States an unpaid principal balance of $7,636.00 plus unpaid interest accrued thereon as of January 28, 1996 in the amount of $1,326.57 and accruing thereafter at the daily rate of $1.78.

WHEREFORE, plaintiff prays:

(1)   That this Court grant plaintiff judgment against the defendant, Robert W. Christoph d/b/a Fox Briar Farm, for the principal sum of $7,636.00, plus interest accrued thereon through January 28, 1996, in the sum of $1,326.57 plus interest thereafter at the daily rate of $1.78 until paid, and all costs of this action. See Certificate of Indebtedness, Exhibit C.

(2)   In accordance with the provisions of 28 U.S.C. § 3011, that the Judgment provided for herein include a ten percent surcharge on the amount of the debt determined to be due and owing to the United States;

(3)   That the plaintiff be granted such other and further relief as to the Court may seem just and proper.

WILLIAM A. KEEFER
United States Attorney
Southern District of Florida

By: _____  12/16/96
MARY F. DOOLEY
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
99 N.E. 4 Street Street, Suite 300
Miami, Florida 33132-2111
(305) 536-5486

3

Commodity Credit Corporation *Composite* **EXHIBIT "A"**

CONTRACT TO PARTICIPATE IN THE 1993 PRICE
SUPPORT AND PRODUCTION ADJUSTMENT PROGRAMS

CHARLEVOIX COUNTY ASCS OFFICE
5-H WEST MAIN STREET
BOYNE CITY          MI          49712-0000

| 2. ST. & CO. Code 26-029 | 3. Farm Number 1213 |

THIS CONTRACT, is entered into between the Commodity Credit Corporation (CCC) and the undersigned producers on the farm identified above for the 1993 crop(s) identified in column 4 which are designated by the operator of the farm by entering 'YES' in column 5 and/or 6, and initialing. The terms and conditions of the contract are contained in the appendix to the contract, entitled Appendix to CCC-477, and any addendum thereto. BY SIGNING THIS CONTRACT PRODUCERS ACKNOWLEDGE RECEIPT OF THE APPENDIX TO THIS CONTRACT, CCC-477 (APPENDIX). This program or activity will be conducted on a nondiscriminatory basis without regard to race, color, religion, national origin, age, sex, marital status, or handicap.

| CROP -- 4 -- | PARTICIPATING IN ARP ----- 5 ----- | PARTICIPATING OPERATORS INITIALS ----- 6 ----- | ACREAGE BASE ----- 7 ----- | HWY ---- 8 -- | REQUIRED ACR ---- 9 ---- | PERMITTED ACREAGE ----- 10 ----- | MAXIMUM PAYMENT ACREAGE ---- 11 ---- | ACRES FOR PAYMENT | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | PLANTED ACRES ---- 12 ---- | 0/50/92 ACRES ---- 13 ---- |
| CORN | YES | JH | 310.5 | 74 | 31.1 | 279.4 | 232.8 | 232.8 | .0 |
| OATS | YES | JH | 53.9 | 39 | .0 | 53.9 | 45.8 | .0 | 36.7 |
| BARLY | NO | JH | 1.1 | 45 | | | | | |

1/ The acreage base for any crop that is not listed is zero.

| OPERATOR Name and Address   ID NO. 38 2458735 | CROP | CORN | OATS | | | | Other Farms |
|---|---|---|---|---|---|---|---|
| FOX BRIAR FARM 1345 BLACK RD CHARLEVOIX, MI 497209566 | ADV. PAYMT | Y DEF | Y DEF | | | | 2  1156 75 229 |
| | % SHARE | ALL | ALL | | | | 298 633 1076 |

*Fox Briar Farms By*

Signature: *Jerry Himelwel*  AGENT          |Date: 3-17-93 |

PRODUCER Name and Address   ID NO. 26 029 0550
JOHN BILEK
CHARLEVOIX, MI 497200001

| CROP | |
|---|---|
| ADV. PAYMT | ************Shares for all crops are zero.************ |
| % SHARE | |

Other Farms

Signature                                          |Date: |

PRODUCER Name and Address   ID NO. 26 029 0699
QUINN POTTER
3250 S BARNARD RD
CHARLEVOIX, MI 497209747

| CROP | |
|---|---|
| ADV. PAYMT | ************Shares for all crops are zero.************ |
| % SHARE | |

Other Farms

Signature                                          |Date: |

PRODUCER Name and Address   ID NO. 26 029 0700
PEGGY THORP
14524 KLOOSTER RD
CHARLEVOIX, MI 497209565

| CROP | |
|---|---|
| ADV. PAYMT | ************Shares for all crops are zero.************ |
| % SHARE | |

Other Farms

Signature                                          |Date: |

PRODUCER Name and Address   ID NO. 270 20 5269
RUSSELL DOHM
12593 FERRY RD
CHARLEVOIX, MI 497209552

| CROP | |
|---|---|
| ADV. PAYMT | ************Shares for all crops are zero.************ |
| % SHARE | |

Other Farms

Signature                                          |Date: |



GOVERNMENT
EXHIBIT
A

| 11 37 72 | Commodity Credit Corporation | | CHARLEVOIX COUNTY ASCS OFFICE | | (616)562 6251 |
| | | | 5-H WEST MAIN STREET | | |
| | CONTRACT TO PARTICIPATE IN THE 1993 PRICE | | BOYNE CITY | MI | 49712 0000 |
| | SUPPORT AND PRODUCTION ADJUSTMENT PROGRAMS | | 2. ST. & CO. Code | 3. Farm Number | |
| | | | 26-029 | 1213 | |

PRODUCER CERTIFICATION SECTION CONTINUED

| PRODUCER Name and Address      ID NO. 346 34 5024 | CROP | | Other Farms |
| ROBERT CHRISTOPH | | | |
| 355 N CANAL ST | ADV. PAYMT | ************Shares for all crops are zero.************ | |
| CHICAGO, IL 606061207 | % SHARE | | |

| Signature | Date: | |

| PRODUCER Name and Address      ID NO. 373 54 9540 | CROP | | Other Farms |
| DAN VONSOOSTEN | | | |
| 4878 BARNARD RD | ADV. PAYMT | ************Shares for all crops are zero.************ | |
| CHARLEVOIX, MI 497209754 | % SHARE | | |

| Signature | Date: | |

REMARKS:

COC determined producer violated contract due to producer losing control of land that was enrolled in the program.

14. CCC Representative's Signature   Carmen A. Klauer        Date 3-22-93

CCC-477 (Appendix)
(02-24-93)

Form Approved - OMB No. 0560-0092

U.S. DEPARTMENT OF AGRICULTURE
Commodity Credit Corporation

APPENDIX TO FORM CCC-477,
CONTRACT TO PARTICIPATE IN THE 1993 PRICE SUPPORT AND
PRODUCTION ADJUSTMENT PROGRAMS

**N O T E**

The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a). The authority for requesting the information to be supplied on CCC-477 is the Agricultural Act of 1949, as amended, and the Commodity Credit Corporation Charter Act, as amended. The information will be used to determine eligibility for program benefits. The information may be furnished to other agencies, IRS, Department of Justice, or other State and Federal Law enforcement agencies, and in response to orders of a court magistrate or administrative tribunal. Furnishing the Social Security information is voluntary. Furnishing the other requested information is voluntary; however, failure to furnish the correct, complete information will result in a determination of ineligibility for certain program benefits. The provisions of criminal and civil fraud statutes, including 18 USC 286, 287, 371, 651, 1001, 15 USC 714m; and 31 USC 3729, may be applicable to information provided by the producer on CCC-477. This program or activity will be conducted on a nondiscriminatory basis without regard to race, color, religion, national origin, age, sex, marital status, or handicap.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Agriculture, Clearance Officer, OIRM, Room 404-W, Washington, D.C. 20250; and to the Office of Management and Budget, Paperwork Reduction Project (OMB No. 0560-0092), Washington, D.C. 20503.

## 1   DEFINITIONS

The following definitions shall apply to Form CCC-477 and this appendix.

A   <u>Acreage Conservation Reserve</u> ("ACR") means the acreage which is required to be taken out of production and devoted to conservation uses in accordance with paragraphs 2 F and G and paragraph 4 of this appendix.

B   <u>Acreage of the crop planted for harvest</u> means the acreage of the crop which is determined by CCC in accordance with 7 CFR Part 1413.

C   <u>Appendix</u> means Form CCC-477 (Appendix).

D   <u>CCC</u> means the Commodity Credit Corporation.

E   <u>Conserving uses</u> ("CU") means all uses of cropland except: (1) acreage devoted to production of a crop of rice, upland or extra long staple ("ELS") cotton, feed grains, wheat, oilseeds, peanuts, a nonprogram crop, an industrial crop and any other crop, (2) acreage designated as ACR for the crop year, (3) acreage designated under the Conservation Reserve Program or other conservation program, and (4) any other acreage excluded in accordance with 7 CFR Part 1413.

F   <u>Contract</u> means Forms CCC-477 and CCC-477 (Appendix) and any addendums thereto. For the purposes of this contract, a producer who executes Form CCC-477 with respect to more than one commodity shall be considered to have an executed contract with respect to each such commodity for which "yes" is entered in column 5 and initialed in column 6 of Form CCC-477.

G   <u>County Committee</u> means the County Agricultural Stabilization and Conservation Committee for the county in which the farm is administratively located.

H   <u>Crop acreage base</u> means the 1993 acreage base for the crop on the farm which is determined by CCC in accordance with 7 CFR Part 1413, including reductions in the base due to participation in the Conservation Reserve Program, adjusted to reflect any determinations made with respect to such base in accordance with 7 CFR Part 780.

CCC-477 (Appendix), page 2

I     Doublecropping means a farming practice, as determined by CCC, of planting and harvesting two or more different crops on the same acreage in a crop year that has been carried out on a farm during at least 3 of the 5 years immediately preceding the crop year for which the crop acreage base for the farm is established.

J     Farm means all land which is constituted as the farm in accordance with the regulations governing constitution and reconstitution of farms at 7 CFR Part 719.

K     Farm yield means the 1993 yield for the farm which is determined by CCC in accordance with 7 CFR Part 1413, adjusted to reflect any determinations made with respect to such yield in accordance with 7 CFR Part 780.

L     Fruits and Vegetables means those crops designated by CCC, a list of which will be announced and made available in the county ASCS office.

M     Maximum payment acres ("MPA") means 85 percent of the crop acreage base for the crop for the farm less the required ACR.

N     Minor oilseed means sunflowers, rapeseed, canola, safflower, flaxseed, and mustard seed.

O     Nonprogram crop means any crop other than a program crop, oilseed, or industrial crop, as may be designated by CCC, a list of which will be available in the county ASCS office.

P     Operator means the producer who is in general control of the entire farming operation on the farm during the program year, as determined in accordance with 7 CFR Part 719.

Q     Permitted acreage means for crops enrolled in the 1993 Price Support and Production Adjustment programs, the crop acreage base minus the required ACR.

R     Producer means a person who as owner, landlord, tenant, or sharecropper is entitled to share in the crops available for marketing (or shares in the proceeds thereof) as determined in accordance with 7 CFR Part 1413. The term "producer" as used in this contract shall include both the "operator" and other producers of the crop on the farm.

S     Program crop means a crop of wheat, corn, grain sorghum, oats, barley, upland cotton, and rice.

T     Repeat crop means the subsequent planting of the same crop on the same acreage after harvesting of the original crop in the same crop year.

U     State Committee means the State Agricultural Stabilization and Conservation Committee for the State in which the farm is administratively located.

V     All other words and phrases shall have the meanings assigned to them in the regulations which are found at 7 CFR Parts 719, 1413, 1497, and 1498.

2    AGREEMENT

A     The producer agrees that CCC may modify any determination made by a County or State Committee concerning the producer's participation in the 1993 Price Support and Production Adjustment Programs. The producer agrees to repay any advance or final payment which CCC may make pursuant to this contract if CCC determines that, notwithstanding any action of a representative of CCC, that the producer is not in compliance with the provisions of the contract and all applicable program regulations, or if CCC determines that the producer is not otherwise entitled to the payment.

CCC-477 (Appendix), page 3

B    With respect to each crop for which participation is indicated in column 5 of Form CCC-477, the parties to this contract (i.e., the operator and each other producer on the farm and CCC) agree that the terms and conditions of the contract shall apply separately to each such crop.

C    The operator agrees to file timely Form ASCS-578 for the farm with the County Committee, accurately listing all crops and land uses on the farm by no later than the final reporting date, as announced by CCC.

D    The parties agree that if the owner or operator of the farm enters into a contract with CCC to participate in the Conservation Reserve Program for the current year, this contract, at the operator's option, may be revoked without liability for liquidated damages or may remain in effect with the crop acreage bases on the farm reduced in accordance with 7 CFR Parts 704, 1410, and 1413.

E    The operator and each producer on the farm agree to limit the acreage of: (1) wheat, barley, oats, upland cotton, rice, corn and grain sorghum, planted for harvest to no more than the permitted acreage specified in column 10 of Form CCC-477, unless the producer plants a crop approved by CCC with respect to such acreage in accordance with paragraph 6; (2) ELS cotton planted for harvest to no more than the permitted acreage specified in column 10 of Form CCC-477.

F    For wheat, feed grains, upland cotton, and rice, the operator and each producer agree to devote to approved conservation uses an acreage of eligible land equal to the product of: (1) For wheat, oats, and barley, 0 percent; upland cotton, 7.5 percent; corn, 10 percent; for rice and grain sorghum, 5 percent, times (2) the acreage base of the crop. Such acreage shall be designated in accordance with paragraph 4 of this appendix.

G    For ELS cotton, the operator and each producer agree to devote to ACR an acreage of eligible land determined by multiplying 25 percent times the number of acres planted to ELS cotton.

H    CCC agrees that harvested production of the crop planted on permitted acreage and acreage planted in accordance with paragraph 6 of this appendix shall be eligible for loans, purchases, and loan deficiency payments in accordance with 7 CFR Parts 1421 and 1427.

## OTHER REGULATIONS

The regulations at 7 CFR Part 1413 governing the acreage reduction program are incorporated by reference as part of this contract.

## REQUIREMENTS FOR ACREAGE DESIGNATED AS ACREAGE CONSERVATION RESERVE (ACR)

A    Eligibility. The producer shall designate cropland as ACR that meets the conditions set forth in clauses (1) through (3):

(1)    Land that meets the minimum size and width requirements of 5.0 acres and 1.0 chain (66 feet). One area per farm may be designated that is smaller than the requirements to complete the balance of required ACR and entire permanent fields may be designated for ACR that are less than the 5.0 acres;

(2)    Land that was devoted to: (a) ACR, conservation uses for which a deficiency payment was earned, a small grain; row crop; or other crop planted annually, or (b) a perennial, or biennial crop planted in a rotation with another crop planted annually in 1 of the last 5 years; and

(3)    Land under the control of the producer which could be planted to crops for harvest in 1993. Land shall not be designated for ACR for more than one program. Land under a Conservation Reserve Program contract shall not

CCC-477 (Appendix), page 4

(4)   Land that has been converted to water storage uses shall be considered to be devoted to conservation uses if the land has been planted to wheat, feed grains, upland cotton, rice, or oilseeds in at least 3 of the last 5 years. The land shall be considered to be devoted to conservation uses for the period that it is used for water storage, but not to exceed 5 years. However, such land shall not be considered to be devoted to conservation uses if: (a) the water is devoted to commercial uses such as commercial fish production; (b) the water stored on the land is ground water; or (c) the farm on which the land is located was not irrigated with ground water in at least 1 of the last 5 years.

B   Covers and Practices. The producer shall protect the land designated as ACR from weeds, insects, rodents, and wind and water erosion as follows:

(1)   Producers shall plant to, or maintain as, an annual or perennial cover, 50 percent of the required ACR acreage (or more at the producer's option), to an annual or perennial cover. The planting may not exceed 5 percent of the crop acreage base (or more at the producer's option). This requirement shall not apply in: (a) arid areas, including summer fallow areas, as determined by CCC; and (b) to ACR for ELS cotton.

(2)   One or more approved covers or practices shall be established on the land designated as ACR by the final date established by the State committee which shall not be later than June 1, unless a later date is authorized by CCC. The following covers are approved for nationwide use:

(a)   annual, biennial, perennial grasses and legumes excluding soybeans, and fruits and vegetables such as potatoes, dry edible beans, peas, and lentils;

(b)   small grains that are disposed of before reaching the disposal deadline, unless other disposition is approved by CCC in accordance with 7 CFR Part 1413; and

(c)   crop residue from use of "no till" or "minimum till" practices.

(3)   Other covers or practices which have been approved in accordance with 7 CFR Part 1413.

(4)   The cover or practices shall be maintained on the land designated as ACR through December 31, 1993 except for approved fall plantings, or as otherwise specifically approved by CCC in accordance with 7 CFR Part 1413.

(5)   Needed measures to control erosion, insects, weeds, and rodents shall be used in a timely manner, as required by CCC in accordance with 7 CFR Part 1413.

C   Multi-year Cover. If a producer elects to establish a perennial cover, and the cover is determined by CCC to be capable of improving water quality and wildlife habitat, CCC shall make available to producers cost-share assistance of not more than 25 percent of the approved cost of establishing the cover on an acreage not to exceed 50 percent of the required ACR. If the producer receives cost-share assistance for establishing such cover, the producer shall agree to maintain the perennial cover for a minimum of 3 years, and designate the land as ACR for 3 consecutive years if ACR is required on the farm.

D   Harvesting, Haying, and Grazing. The producer shall assure that the land designated as ACR is not grazed, hayed, or harvested, unless grazing, haying, or harvesting is approved for any specified period in accordance with 7 CFR Part 1413.

5   REDUCTION OF ACR

Producers whose total payments are projected to exceed the payment limitation may request a proportionate reduction in the

CCC-477 (Appendix), page 5

## 6   PLANTING FLEXIBILITY ON PROGRAM CROP ACREAGE

A   Producers may plant for harvest on an enrolled program crop acreage base, a commodity other than such program crop, and receive planted and considered planted credit on such program crop, as provided in this paragraph. The quantity of a crop acreage base that may be planted under the provisions of this paragraph may not exceed 25 percent of the crop acreage base.

B   (1)   Crops that may be planted for harvest on an enrolled crop acreage base are:

    (a)   any program crop;

    (b)   any oilseed, and;

    (c)   any experimental, industrial, or other crop that is designated by CCC.

    (2)   Fruits and vegetables such as potatoes, dry edible beans, peas, lentils; and peanuts, tobacco, wild rice, trees, tree crops, and nuts, and crops for which no substantial market exists may not be planted on a crop acreage base under the provisions of this paragraph.

C   Producers of a program crop which is enrolled in the 1993 price support and production adjustment program for that crop ("an original crop") shall be allowed to plant such crop in excess of the permitted acreage established for the farm for that crop without losing program benefits for such crop, if the excess acreage planted to such crop does not exceed 25 percent of the crop acreage bases on the farm for other program crops which the producer has enrolled in the 1993 price support and production adjustment programs, and the producer agrees to a reduction in the permitted acreage for the other program crops produced on the farm by the quantity equal to the overplanting.

D   Producers of an original program crop who plant for harvest another program crop on the crop acreage base established for the original crop, and who are not participating in a 1993 price support and production adjustment program for such crop, shall be eligible for loans, purchases, or loan deficiency payments with respect to such other program crop only if no additional acreage of such other program crop is planted on the farm.

## PRICE SUPPORT ELIGIBILITY FOR OILSEEDS ON 0/92 ACREAGE

A   Producers who plant for harvest acreages of minor oilseeds in accordance with paragraph 23 C of this appendix have the option to elect to receive either:

    (1)   Deficiency payments with respect to such acreage; or

    (2)   Price support loans, or loan deficiency payments with respect to such minor oilseeds.

B   Price support loans, or loan deficiency payments shall not be available with respect to:

    (1)   Acreages of minor oilseeds and soybeans subsequently planted on such acreage; and

    (2)   Any acreage on the farm of a minor oilseed that is considered planted to a program crop for purposes of making deficiency payments in accordance with subparagraph A (1).

## CORN AND GRAIN SORGHUM PERMITTED ACREAGE COMBINATION

A   The permitted acreages of corn and grain sorghum shall be combined and producers may plant any combination of corn

CCC-477 (Appendix), page 6

B     For purposes of establishing corn and grain sorghum crop acreage bases for subsequent years, the sum of the planted and considered planted acreage of corn and grain sorghum for 1993 shall be prorated to corn and grain sorghum, based on the ratio of the 1993 crop acreage base for the individual crop of corn and grain sorghum, as applicable, to the sum of the 1993 crop acreage bases for corn and grain sorghum.

C     For the purposes of computing 1993 deficiency payments, the sum of the 1993 corn and grain sorghum payment acres for a farm shall be prorated to corn and grain sorghum based on the ratio of the maximum payment acreage for corn and grain sorghum established for 1993.

## 9 REQUIREMENTS FOR ACREAGE DESIGNATED AS CONSERVING USE ACRES FOR PAYMENT

**Eligibility.** In order to receive deficiency payments with respect to acreage not planted to the program crop, the producer shall designate cropland as conserving uses which:

A     Meet the requirements of subparagraph 4 A of this appendix; and

B     Is protected from weeds, insects, rodents, and wind and water erosion.

## 10 COMMODITY CREDIT CORPORATION DETERMINATIONS

Several of the terms and conditions of this appendix and 7 CFR Part 1413 are made on a farm, county, or State basis. Accordingly, in this appendix, there are references to terms and conditions as determined by CCC. Producers may obtain a copy of these terms and conditions from the County Committee.

## 11 COMPLIANCE WITH 7 CFR PART 12, HIGHLY ERODIBLE LAND AND WETLAND PROVISIONS

A     The provisions of 7 CFR Part 12 are applicable to this contract. Each person who violates such provisions shall refund any payment, loan, or purchase amount received for all crops on all farms in which such person has an interest.

B     Land that is designated by the producer as ACR or is designated in accordance with paragraph 23 C of this appendix is subject to the requirements of 7 CFR Part 12.

## 12 SUCCESSION IN INTEREST

A     When any person who had an interest as producer of the crop or would have had an interest in the crop as a producer if the crop had been planted (the "predecessor") is succeeded on the farm by another producer (the "successor") after a contract has been executed, any payment which is due and owing shall be divided between the predecessor and successor on such basis as the predecessor, successor, and CCC agree is fair and equitable. The contract shall be revised accordingly, and the successor shall sign the revised contract. Payments to the successor shall be limited to amounts that would have been earned on the farm by the predecessor. The successor shall assume responsibility for refunding any unearned payments issued to the predecessor, if such refunds are required under the contract.

B     If the predecessor and successor fail to agree on a revised contract and the predecessor has become unable to carry out the producer's responsibilities under the terms and conditions of the contract, CCC may terminate the contract with respect to the predecessor and may, if CCC so elects, enter into a new contract with the successor.

CCC-477 (Appendix), page 7

13   MALTING BARLEY ASSESSMENT

A   Except in counties where the CCC determines that malting barley is not produced, an assessment for the 1993 crop will be levied on producers of malting barley who are participating in the barley price support and production adjustment program. The final barley deficiency payment made to producers of barley produced in these counties shall be reduced by the amount of the assessment, which will be computed by multiplying the smaller of the: (1) deficiency production for planted acres, or (2) malting barley production as certified by the producer in accordance with 7 CFR 1413.111 times the smaller of: (a) 5 percent times the State's average market price for malting barley, if applicable, or the national average market price for malting barley when the State's average market price is not available, or (b) the deficiency payment rate.

B   Producers who certify that all or a portion of their barley was not harvested or was used for feed purposes will have their assessment reduced to reflect only the quantity of barley that was produced and sold for malting purposes.

C   Producers will have until the later of September 1, 1994, or 30 days after barley pledged as collateral for CCC price support loan is redeemed or forfeited to CCC to file the certification in subparagraph B. If the producer furnishes acceptable evidence of production and disposition as determined by CCC, the payment shall be recalculated and a supplemental payment issued, when applicable.

4   **PAYMENTS**

A   Each producer listed on the contract shall share in the deficiency payments for the crop based upon: (1) the producer's share of the crop or the proceeds thereof, or (2) if no crop is produced, the share which the producer would have otherwise received had the crop been produced. Such payments shall be determined in accordance with paragraph 23 of this appendix.

B   Notwithstanding the provisions of paragraph 12 A of this appendix, a different division of payments among producers which is fair and equitable may be approved by CCC if all of the producers who would otherwise share in the payment agree to the different division by signing the contract, and such division of payment would not circumvent the limitation provisions of 7 CFR Part 1413, and if there is no violation of the provisions relating to tenants and sharecroppers in 7 CFR Part 1413 or the payment limitation provisions in 7 CFR Parts 1497 and 1498.

C   A person shall refund to CCC an amount which exceeds the amount of payment actually earned under the 1993 programs for wheat, feed grains, upland and ELS cotton, and rice. Interest shall be assessed in accordance with 7 CFR Part 1403.

5   **ERRONEOUS REPRESENTATION AND SCHEME AND DEVICE**

A   A producer who is determined to have erroneously represented any fact affecting a program determination with respect to this contract shall not be entitled to payments or any other benefits made in accordance with the crop program for which the representation was made and the producer shall refund to CCC all payments received by such producer with respect to the farm and the crop and be subject to liquidated damages, determined in accordance with paragraph 17 of this appendix.

B   With respect to any crop program, a producer who is determined to have knowingly: (1) adopted any scheme or device which tends to defeat the purpose of a program, (2) made any fraudulent representation, or (3) misrepresented any fact affecting a program determination shall refund to CCC all payments from all crop programs received by such producer with respect to the farm and shall be subject to liquidated damages determined in accordance with paragraph 17 of this appendix.

C   Refunds determined to be due and owing to CCC in accordance with paragraphs 15 A and B of this appendix shall bear interest at the rate determined in accordance with 7 CFR Part 1403. Such interest shall accrue from the date of disbursement to the earlier of the date of refund or the date of delinquency as determined under 7 CFR Part 1403.

CCC-477 (Appendix), page 8

D    The provisions of paragraphs 15 A and B of this appendix shall be applicable in addition to any liability under criminal and civil fraud statutes, including 18 USC 286, 287, 371, 641, 1001; 15 USC 714m; and 31 USC 3729.

16    CLAIMS

Any payment or portion thereof due any person shall be made by CCC without regard to question of title under State law, and without regard to any claim or lien against the crop, or proceeds therefrom, which may be asserted by any creditor, except agencies of the U.S. Government. Offsets for debts owed to agencies of the U.S. Government shall be made.

17    LIQUIDATED DAMAGES

It is agreed that the failure to carry out the terms and conditions specified in the contract will cause serious and substantial damages to CCC and the 1993 acreage reduction program. The failure to carry out such terms and conditions if widespread, would cause substantial variations in market prices and impair the effectiveness of the program in achieving the program's objectives. If the 1993 program is not effective, additional expense could be incurred in subsequent years to operate programs which are effective. Since determining the amount of these damages is difficult, if not impossible, the following provisions shall be applicable:

A    In the event that there is a violation of any of the provisions of paragraphs 2 E and 2 F of this appendix, the operator and all other producers shall pay liquidated damages to CCC which are calculated in accordance with paragraph 17 E of this appendix. Liability for the liquidated damages shall be divided according to the producers' shares as shown on Form CCC-477.

B    In the event that there is a violation of any of the provisions of paragraph 2 C of this appendix, the operator shall agree to pay liquidated damages to CCC which are calculated in accordance with paragraph 17 E of this appendix.

C    In the event that there is a violation by a producer of any of the other terms and conditions which are specified in this contract, such producer shall agree to pay liquidated damages to CCC which are calculated by multiplying: (1) the producer's share as indicated on Form CCC-477 by (2) the amount calculated in accordance with paragraph 17 E of this appendix.

D    A producer shall not be liable for liquidated damages in accordance with the provisions of more than one of paragraphs 17 A, B, and C of this appendix.

E    The amount of liquidated damages shall be computed by (1) multiplying the applicable program payment yield, as determined by CCC, by (2) 10 percent of the crop acreage base for the crop(s) with respect to which the violation occurred, times (3) the liquidated damage rate (20 percent of the applicable established price) for such crop. However, liquidated damages computed in accordance with this formula shall be reduced by 50 percent when producers elect to rescind this contract for a crop(s) PROVIDED a request to rescind is filed with the county committee BEFORE the county committee has discovered a failure on the part of the producer to comply with the terms and conditions of this contract. No liquidated damages will be assessed for contracts rescinded by the end of the signup period for participation in the program.

18    LOSS OF BENEFITS

A    Payment of liquidated damages to CCC in accordance with paragraph 17 shall be made by producers who:

    (1)    elect to rescind this contract; or

    (2)    violate this contract and for whom CCC makes no determination of a good faith effort to comply with the contract and program regulations.

CCC-477 (Appendix), page 9

Such producers shall be considered as not participating in the production adjustment and price support program for such crop.

B    If a producer violates the provisions of the contract or program regulations, and CCC determines a good faith effort was made to comply with the contract and program regulations, payments under the program will be reduced as follows:

    (1)    If the producer has filed an inaccurate acreage report, such reduction will be calculated as the difference between the reported and determined acreage of the crop, multiplied by the program payment yield, multiplied by 20 percent of the established price for the crop.

    (2)    If the producer has failed to properly maintain ACR or CU for payment acreage, such reduction shall be determined by multiplying (a) the number of acres in default by (b) two times the value received per acre, as determined by the county committee, for harvesting or grazing or two times the cost per acre, as determined by the county committee, of carrying out satisfactory measures to correct the default for: noncontrol of weeds, wind or water erosion; or not maintaining eligible cover, as applicable.

C    In addition to requiring the payment of any refund determined under paragraph 14 C of this appendix and in addition to requiring the payment of any liquidated damages assessed in accordance with paragraph 17 of this appendix, CCC reserves the right to consider the producer on a farm to be ineligible for any benefits under the contract when there is a failure of any producer on the farm to comply with the terms and conditions of the contract.

## 19   NOTIFICATION OF CHANGES TO CONTRACT

Except as provided in paragraph 21 of this appendix, CCC agrees that, if any change of any of the terms and conditions of the contract becomes necessary prior to the date that the contract is approved on behalf of CCC, CCC will notify the producer of such change and the producer will be given 10 days from the date of notification in which to agree to the revised terms and conditions or to withdraw from the contract. The producer agrees to notify the County Committee of an intention to withdraw from the contract within 10 days from the date of the notice and further agrees that failure to notify the County Committee shall constitute agreement to the revised terms and conditions.

## 20   CORRECTIONS

CCC reserves the right to correct all errors in entering data on Form CCC-477 and the results of computations made pursuant to the contract. CCC also reserves the right to require refunds of payments as the result of determinations made concerning the application of 7 CFR Parts 1497 and 1498.

## 21   EFFECTIVE DATE AND CHANGES TO CONTRACT

A    The contract is effective when signed by the operator and each of the producers on the farm, and an authorized representative of CCC. Except as provided in paragraphs 2 D, 19, 20, and 21 of this appendix, an approved contract may not be revoked or revised unless by mutual agreement between the parties.

B    In the event that a statute is enacted during the period of this contract under which CCC would be required to materially change the terms and conditions of the contract, CCC may require the producer to elect between acceptance of modifications in the contract consistent with the provisions of such statute or termination of the contract. The producer agrees to notify the County Committee of an intention to withdraw from the contract within 10 days from the date of the notice of such modifications and further agrees that failure to notify the County Committee shall constitute agreement to the revised terms and conditions.

*Composite*
**EXHIBIT "B"**

United States Department of Agriculture
Farm Service Agency
Charlevoix County, ASCS Office
S. H. West Main Street
Boyne City, MI. 49712
October 5, 1995

Robert Christoph
355 N. Canal Street
Chicago, IL. 60606

Dear Mr. Christoph,

You were previously notified by letters dated December 29, 1993, January 13, 1994 February 23, 1994 and April 18, 1994 that you owe CCC $7,636.00 and $170.90 for a total of $7,806.90. This debt is overdue. Please make check payable to Commodity Credit Corporation and mail or deliver to the County Office.

Because you have failed to respond to our previous letters, we have been forced to:

* establish claim 26 029 10 00017 in the amount of $7,636.00 and claim 26 029 10 0018 in the amount of $170.90.

* assess a late payment interest rate of 8.5 percent per annum, which began accruing on the debt on a daily basis on January 13, 1994.

* offset any CCC or ASCS payments that may due to you.

* request that other Government Agencies offset any amounts that may be due to you.

If you have any questions regarding this matter, please do not hesitate to let us hear from you.

Sincerely,

Carmen A. Kleaver
Carmen A. Kleaver
County Executive Director

GOVERNMENT EXHIBIT B

 **UNITED STATES
DEPARTMENT OF
AGRICULTURE**

**Agricultural
Stabilization and
Conservation Service**

**Michigan State ASCS Office
3001 Coolidge Road  Suite 100
East Lansing, MI  48823-6321**

## IMPORTANT, PLEASE DO NOT DISREGARD THIS LETTER

August 10, 1994

Fox Briar Farm
c/o Robert Christoph
355 N. Canal St.
Chicago, IL 60606

Dear Fox Briar Farm:

The Charlevoix County ASCS Office has referred its claim against you for $8,025.44 to us for further handling.  Claim No. 26-029-10-00017 was established based on your 1993 advance corn deficiency payment.  This claim now consists of $7,636.00 principal and $389.44 interest.  This interest is calculated to August 20, 1994.

Interest is accruing at a rate of 8.5% per annum, which is $1.78 per day.  This interest will continue to accrue on a daily basis until this debt is paid in full.

In order to settle this debt, submit your payment of $8,025.44 to this office within 10 calendar days from the date of this letter.  Your check should be made payable to Commodity Credit Corporation.

If we do not receive payment from you within the allotted 10 days, your debt will be reviewed for referral to the OFFICE of GENERAL COUNSEL and the UNITED STATES ATTORNEY'S OFFICE for legal action.  This legal action could result in the filing of a suit or judgment against you to recover the amount due USDA-ASCS, Commodity Credit Corporation.  This action could result in additional expenses to you.

If you wish to discuss this debt or establish a repayment schedule, please contact Sandi Ramos at (517) 337-6660, Extension 1212.

Sincerely,

James E. Byrum



| UNITED STATES | Agricultural | Michigan State ASCS Office |
| DEPARTMENT OF | Stabilization and | 3001 Coolidge Road  Suite 100 |
| AGRICULTURE | Conservation Service | East Lansing, MI  48823-6321 |

## <u>IMPORTANT, PLEASE DO NOT DISREGARD THIS LETTER</u>

August 10, 1994

Fox Briar Farm
c/o Robert Christoph
355 N. Canal St.
Chicago, IL 60606

Dear Fox Briar Farm :

The Charlevoix County ASCS Office has referred its claim against you for
$179.62 to us for further handling.  Claim No. 26-029-10-00018 was established
based on your 1993 advance oats deficiency payment.  This claim now consists of
$170.90 principal and $8.72 interest.  This interest is calculated to August 20,
1994.

Interest is accruing at a rate of 8.5% per annum, which is $.04 per day.  This
interest will continue to accrue on a daily basis until this debt is paid in full.

In order to settle this debt, submit your payment of $179.62 to this office within
10 calendar days from the date of this letter.  Your check should be made payable
to Commodity Credit Corporation.

If we do not receive payment from you within the allotted 10 days, your debt will
be reviewed for referral to the OFFICE of GENERAL COUNSEL and the UNITED
STATES ATTORNEY'S OFFICE for legal action.  This legal action could result in the
filing of a suit or judgment against you to recover the amount due USDA-ASCS,
Commodity Credit Corporation.  This action could result in additional expenses to
you.

If you wish to discuss this debt or establish a repayment schedule, please contact
Sandi Ramos at (517) 337-6660, Extension 1212.

Sincerely,

James E. Byrum

Agricultural Stabilization and Conservation Service
Charlevoix County ASCS Office
5-H West Main Street
Boyne City, MI. 49712
April 18, 1994

Robert Christoph
355 N. Canal Street
Chicago, IL. 60606

Dear Mr. Christoph,

You were previously notified by letters dated December 29, 1993, January 13, 1994 and February 23, 1994 that you owe CCC $7,636.00 and $170.90 for a total of $7,806.90.  This debt is overdue.  Please make check payable to Commodity Credit Corporation and mail or deliver to the County Office.

Because you have failed to respond to our previous letters, we have been forced to:

* establish claim 26 029 10 00017 in the amount of $7,636.00 and claim 26 029 10 0018 in the amount of $170.90.

* assess a late payment interest rate of 5.5 percent per annum, which began accruing on the debt on a daily basis on January 13, 1994.

* offset any CCC or ASCS payments that may due to you.

* request that other Government Agencies offset any amounts that may be due to you.

As stated in previous correspondence to you, if payment in full or arrangements to pay this debt in full are not made by April 24, 1994, information about this debt, including your name, address, taxpayer identification number, amount, status, and history of the debt, and program under which the claim arose may be disclosed to credit reporting agencies.  Further, if this matter remains unresolved by April 13, 1994, we are required to assess an additional 3 percent per annum retroactively from January 13, 1994 and this matter will be referred to our Office of General Counsel for collection.

If you have any questions regarding this matter, please do not hesitate to let us hear from you.

Sincerely,

Carmen A. Kleaver

Carmen A. Kleaver

Agricultural Stabilization and Conservation Service
Charlevoix County ASCS Office
5-H West Main Street
Boyne City, MI. 49712
February 23, 1994


Robert Christoph
355 N. Canal Street
Chicago, IL. 60606


Dear Mr. Christoph,

You were previously notified by letters dated December 29, 1993 and January 13, 1994 that you owe CCC $6,309.00. However, this amount did not include interest or liquidated damages that were to be accessed on the claim therefore, the amount now due is $7,806.90. This debt is past due. Please make check payable to Commodity Credit Corporation and mail or deliver to the county office.

We still want to work with you to resolve this matter. However, because you have not responded to our previous letters, we have been forced to establish Claim No. 26 029 10 00017 in the amount of $7,636.00 and Claim No. 26 029 10 00018 in the amount of $170.90. Late payment interest of 5.5 per annum began accruing on the debt on a daily basis on January 13, 1994 and will continue to accrue until the debt is paid in full. In addition, we are offsetting any CCC or ASCS payments that may be due to you. We are also taking steps to request that other Government Agencies offset any amounts that may due to you.

If payment in full or arrangements to pay this debt in full are not made within 60 calendar days from the date of this letter, information about this debt, including your name, address, taxpayer identification number, amount, status, and history of the debt, and program under which the claim arose may be disclosed to credit reporting agencies. Any request for review of the appropriateness of reporting this debt to a credit reporting agency must be made within 30 calendar days from the date of this letter. If this matter remains unresolved by April 17, 1994, an additional 3 percent interest per annum shall be assessed retroactively from January 13, 1994 and this matter will be referred to our Office of General Counsel for collection.

If you have any questions regarding this matter, please do not hesitate to let us hear from you.

Sincerely,

Carmen A. Kleaver
Carmen A. Kleaver
County Executive Director

Agricultural Stabilization and Conservation Service
Charlevoix County ASCS Office
5-H West Main Street
Boyne City, MI. 49712
January 13, 1994

Robert Christoph
355 N. Canal Street
Chicago, IL. 60606



Dear Mr. Christoph,

On December 29, 1993 you were notified that payment in the amount of $6,309.00, for the advanced payments you received under the Wheat and Feed Grain Program was due CCC. At that time you were given an opportunity to appeal the determination. We have not received a response from you. Therefore, the debt has been recorded for offset from any CCC or ASCS payment due you.

You may make a request to enter into a written agreement for the repayment of the debt if you can document your inability to pay the full amount of the debt at this time. Approving these agreements is solely at the option of CCC or ASCS.

If payment in full is NOT made within 30 days after the date of this letter and you have not requested a repayment agreement:

1   A claim will be established.

2   The claim may be reported to other Government Agencies for offset from any amounts that may be due you.

3   Late payment interest at the annual rate of 5.500 percent will be applied to your debt on a daily basis from the date of this letter until your debt is paid in full.

In addition, if payment in full or arrangements to pay this debt in full are not made within 60 days after the date of this letter, information about this debt, including your name, address, taxpayer identification number, amount, status, and history of the debt, and program under which the debt arose may be disclosed to credit reporting agencies. Any request for review about the appropriateness of reporting this debt to a credit reporting agency must be made within 30 days after the date of this letter.

If payment in full or arrangements to pay this debt in full are not made within 90 days after the date of this letter, an additional 3 percent interest shall be assessed on the unpaid balance of the debt retroactively from the date of this letter.

"Commodity Credit Corporation" and mail it to 5 H West Main Street, Boyne City, Michigan, 49712.

Sincerely,


Carmen A. Kleaver
County Executive Director


**COPY ALSO SENT TO HIS MIAMI BEACH FLORIDA ADDRESS**

Agricultural Stabilization and Conservation Service
CHARLEVOIX COUNTY ASCS OFFICE
5-H WEST MAIN STREET
BOYNE CITY, MI  49712-0000
Telephone:  (616)582-6231


December 29 1993


Robert Christoph
355 N. Canal Street
Chicago, IL  60606

RE:  1993 WHEAT AND FEED GRAIN CONTRACT

Dear Mr. Christoph:

This letter is to inform you that the Charlevoix County ASC
Committee has determined that you are out of compliance with
the above program provisions due to the fact that you have lost
control of the farm.  Since you are no longer in compliance, it
is necessary for you to refund the advanced payments in the
amount of $6,309.00 which you received from this office.
Please send us a check made payable to CCC in the amount of
$6,309.00 to take care of this matter.

If you want to contest this determination, including the
amount, file a request with the Charlevoix County ASC Committee
within 15 days of the date of this letter to obtain a
reconsideration and an informal hearing.  Provide evidence to
support your position.  During these 15 days, you may also
inspect and copy records located at the above address that
relate to this determination.

The amount stated above will be recorded for offset and offset
may be taken from any CCC or ASCS payment due you.

Sincerely,

Carmen A. Kleaver

Carmen A. Kleaver
County Executive Director


ALSO SENT COPY TO N. PALM BEACH, FLORIDA ADDRESS

# USDA-ASCS
# EAST LANSING, MICHIGAN

# CERTIFICATE OF INDEBTEDNESS

Fox Briar Farm.
ROBERT W. CHRISTOPH
300 ALTON ROAD
SUITE 303
MIAMI BEACH, FLORIDA
33139
Total debt due United States as of January 28, 1996:   $ 8,962.57

I certify that USDA-ASCS records show that the debtor(s) named above is/are indebted to the United States in the amount stated above, plus additional interest on the principal balance of $7,636.00 from January 14, 1994 at the annual rate of 8.5%. Interest accrues on the principal amount of this debt at the rate of $1.78 per day.

The producer signed into the 1993 Price Support and Production Adjustment Program on 3-17-93. The producer lost control of the farm and the Charlevoix County FSA Committee determined that he was out of compliance and the advance payment on corn and oats was to be repaid. The producer was notified by letter on various dated. No repayments have been made toward the debt.

**CERTIFICATION:** Pursuant to 28 USC § 1746, I certify under penalty of perjury that the foregoing is true and correct.

2-14-96
Date

Christine White,
Acting State Executive Director

GOVERNMENT
EXHIBIT
C

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**96-3611**

**CIV-LENARD**

**MAGISTRATE JUDGE JOHNSON**

## I (a) PLAINTIFFS

UNITED STATES OF AMERICA

FILED by INTAKE
DEC 18 1996
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**DEFENDANTS**

ROBERT W. CHRISTOPH,
D/B/A  FOX BRIAR FARM

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

A: Dade 1:96 cv 3611/JAL/LRS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __DADE__
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
MARY F. DOOLEY, AUSA
99 N.E. 4th Street, Suite 300
Miami, FL  33132  Tel No. (305)536-5490

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Recovery of advanced deficiency payments for crops which have been determined to be unearned pursuant to 15 U.S.C. § 714b(c).

IVa. ___1___ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury— Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **A PROPERTY RIGHTS** | B [ ] 450 Commerce/ICC Rates/etc. |
| [X] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers Liability | | [ ] 640 R R & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| B [ ] 152 Recovery of Defaulted Student Loans (Excl Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| B [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **B SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders Suits | [ ] 355 Motor Vehicle Product Liability | B [ ] 380 Other Personal Property Damage | **A LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | B [ ] 720 Labor/Mgmt Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | [ ] 730 Labor/Mgmt Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| | | | | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| B [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus | [ ] 740 Railway Labor Act | **A FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U S Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing Accommodations | [ ] 535 Death Penalty | B [ ] 791 Empl Ret Inc Security Act | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions *A or B |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | | | |
| [ ] 290 All Other Real Property | | *A or B | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Refiled
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
[ ] UNDER F.R.C.P. 23

**DEMAND $**  $8,962.57 plus int.

Check YES only if demanded in complaint:
**JURY DEMAND:**  [ ] YES  [X] NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE  12/16/96

SIGNATURE OF ATTORNEY OF RECORD
Mary F. Dooley, AUSA

FOR OFFICE USE ONLY: Receipt No._____   Amount:_____

Date Paid:_____   N/ifp:_____

UNITED STATES DISTRICT COURT
S/F  I-2
REV. 6/90